the plaintiff is entitled to full compensation for his injury. But when, beyond mere indemnity, the plaintiff seeks to recover exemplary damages, the fact of actual malice in the publication becomes a relevant and material consideration. Hence, in defeat or mitigation of exemplary damages, the defendant may introduce any evidence of which the legitimate tendency is to show that he was not actuated by a wanton or malicious motive; as, for instance, that the libel was uttered negligently, or against his will, or in belief of the apparent truth of the defamatory charge."

This decision, and others of like character, apply only to facts tending to show a want of actual malice on the part of the defendant; and it is clear that in those cases they cannot have the effect of mitigating the actual damage sustained by the plaintiff. But in a case where a publication consists of more than one libelous statement, and the defendant is justified in offering in evidence in mitigation of damages the partial truth of the libel, and such facts are to be considered by the jury in mitigation of damages, it would seem to me to follow that such facts are provable to decrease the damage which would have been sustained by the plaintiff by the publication as a whole, if the defendant had failed to prove the truth of any of the facts alleged which constituted the libel.

I have before stated the reasons why I do not think that the instruction to the jury in this case was to the effect that the facts as proven could not be considered in mitigation of the actual damage sustained by the plaintiff in consequence of this entire publication, for the court had instructed the jury that they were not to consider upon the question of damages any part of the libel which had been proved to be true; and the other facts alleged in the justification apply only to the question of the defendant's malice, and which necessarily were confined to the question of punitive damages.

In the rest of Mr. Justice O'BRIEN'S opinion I concur, and therefore concur in the affirmance of the judgment.

McLAUGHLIN, J., concurs.

---

(22 Misc. Rep. 249.)

### STEELE v. CONNECTICUT GEN. LIFE INS. CO.

(Supreme Court, Special Term, Onondaga County.    January, 1898.)

LIFE INSURANCE — ACTION BY DOMESTIC ADMINISTRATRIX—RIGHTS OF FOREIGN ADMINISTRATOR.

Two policies of life insurance were issued by a foreign company to one who pledged them to the company, and removed to New York, where he died. without having redeemed them. In the foreign state, where deceased had assets and debts, an administrator was appointed, who paid the company the amount of the loan, and demanded delivery and payment of the policies. One was paid, and suit was commenced on the other. Insured's wife, who participated in the appointment of the foreign administrator, secured letters of administration in New York, and sued on the policies, without offering to pay the loan. The company had notice of her appointment, and that she demanded payment of the policies, but had no actual notice of the suit until after it paid the one policy to the administrator. Held, that she could not maintain the suit as against the foreign administrator.

Action by Blanche M. Steele, as administratrix of the estate of Herbert A. Steele, deceased, against the Connecticut General Life Insurance Company, to recover on two policies of insurance issued on deceased's life. Complaint dismissed.

Frank C. Sargent and William Kennedy, for plaintiff.
C. H. Lewis, for defendant.

HISCOCK, J. The defendant is a corporation organized under the laws of Connecticut, and having its principal or home office in Hartford, in that state. The deceased and insured Herbert A. Steele, at the time of the execution of the policies in question, was a resident of Connecticut. February 25, 1887, the defendant issued the first of the policies in question for $2,000, payable to "Minnie W. Steele, wife of the said insured, if surviving, and, if she be then dead, to the legal representatives of the insured." It was payable at the home office of the company. October 18, 1890, the said wife, Minnie W. Steele, assigned her interest in said policy to the insured. The second of said policies, for $3,000, was issued by the defendant December 2, 1887, and made payable to "the legal representatives of the insured at the home office of the company." January 6, 1888, the insured assigned his interest in said policy to his mother, Sarah H. Steele, who was a resident of Connecticut. She, in turn, October 23, 1893, reassigned the policy to the insured. Upon the dates October 23, 1893, and March 6, 1894, respectively, after he had become vested with the entire ownership thereof, the insured assigned said policies to the defendant, the one for $3,000 upon a loan of $600, then made by said defendant, and the one for $2,000 upon a loan for $400, then also made by it. The assignment in each case is absolute upon its face. It does not appear therefrom that the same is as security for the loan then made, but such, beyond any question, was the fact. The policies themselves at said dates, respectively, were delivered to and left with, and until after the death of the insured, as hereinafter stated, continuously remained in the possession of, defendant at its home office, said loans not having been paid up. The insured, having become divorced from the wife mentioned in one of said policies, came to Syracuse, where he married plaintiff, and continued to reside for two or three years before his death, which occurred at said city on or about February 4, 1897. The decedent left him surviving in Connecticut a son and mother, and also had in said state, at the time of his decease, some real estate, and possibly some personal estate outside of the policies in question, and also quite a large amount of debts, which have been presented to his administrator in that state. February 4, 1897, petition was made in said state for letters of administration upon his estate, and such proceedings had that thereafter and on or about March 9, 1897, letters were issued to the mother, Sarah H. Steele, and one George D. Bissell, who thereupon gave bonds and entered upon the discharge of their duties as such. Later this plaintiff appeared in probate court, where said letters had been issued, by her attorneys, and petitioned to re-

open the decree granting letters to said persons, and upon her application such proceedings were had that upon said date another decree was made, removing the mother, and constituting and appointing sole administrator of said estate said Bissell, who thereafter continued to act as such. In the meantime, and upon March 2, 1897 (and subsequent to the presentation of the petition for administration in Connecticut, and prior to the decree granting such administration), the plaintiff had been appointed administratrix upon the estate of said deceased in the county of Onondaga, where he died. April 19, 1897, the Connecticut administrator, presenting his certificate of appointment as such, appeared at the home office of defendant, and, offering to pay the loans by it made, as hereinbefore stated, demanded the said policies. The defendant, requesting time for consideration and consultation with its counsel, the same was allowed, and said administrator again appeared on April 22d, and renewed said offer and demand, with the result that he paid to the company the amount due on said two loans, $1,000, with accrued interest, and the company surrendered to him the policies. He then also demanded of defendant payment of said policies. The defendant paid him the amount due upon the $3,000 policy, but did not pay the other one, and thereafter, and on or about May 10th, action was commenced by him upon said policy against said defendant, which is now pending in the state of Connecticut. After her appointment as administratrix, plaintiff, through her attorney, had some correspondence with the defendant about these policies. There was some communication about paying the loans for which they were held, but, as a matter of fact, no sufficient or legal offer or tender of the amount due upon said loans was ever made by plaintiff to said defendant. Something also was said in said correspondence in behalf of plaintiff about suing defendant, and some days before the Connecticut administrator called upon the defendant as above stated (April 19th) plaintiff's attorney wrote that suit had been commenced upon said policies, but at said date one of said policies was not due, and such suit was not, as a matter of fact, commenced. April 21st, however, suit was actually commenced by plaintiff against defendant upon said policies by service in this state upon the person designated by law. Actual notice of such commencement, however, was not brought to defendant until April 23d. Therefore, on April 22d, when defendant delivered to the Connecticut administrator the policies in question, and subsequently paid one of them, while it knew that there was an administratrix in this state, claiming said policies, it did not know that suit had been commenced thereon, and there is nothing to indicate that at said date, or until some time thereafter, the Connecticut administrator knew that anybody else had commenced a suit upon or made claim to the proceeds of said policies. It does not appear that he knew that any administrator other than himself had been appointed. There is no evidence that defendant, in delivering said policies and in making payment as it did, acted in any way in collusion with the Connecticut administrator, and with any other purpose than to legally and properly discharge its obligations. It appears in the case that,

in addition to her appearing by attorneys in probate court at the time when Mr. Bissell's co-administrator was removed and himself constituted sole administrator, the plaintiff at some other time appeared therein, and secured a decree authorizing and directing such Connecticut administrator to pay her a certain allowance from time to time.

Under these facts the plaintiff urges that she should be allowed to recover of defendant in this action upon both policies, notwithstanding the fact that it has already actually paid the amount of one thereof to the Connecticut administrator, and is defendant in a suit brought by him upon the other one. I do not think that she should be so allowed to recover upon either policy. No issue was, or upon the evidence in the case could be, raised over the legality of the appointment both of the plaintiff as administratrix in this state and of Mr. Bissell in Connecticut. It is to be assumed upon the evidence that the court of each state had jurisdiction to make the appointment which it did. Neither is the issue in the action, in my judgment, exactly or fully embraced in the question whether the obligation of the defendant represented by these two insurance policies would, under ordinary circumstances, be regarded as an asset in the state of New York or in the state of Connecticut. But the question is whether, under all of the circumstances of this case, this court has the right to or should exercise its jurisdiction to compel defendant to pay to this plaintiff the amounts of such policies as against the payment already made by it of one thereof to the Connecticut administrator, and the suit by him pending against it upon the other one. The obligation evidenced by a policy of insurance is a simple contract debt, and is assets where the debtor resides. Furthermore, for the purpose, at least, of establishing the situs of such an asset for purposes of administration, a corporation is to be regarded as being a resident of any state wherein it is represented by an agent upon whom process may be served. So far, therefore, as the location of an asset represented by a policy of insurance is to be determined by the mere residence of the debtor, it may exist in several different states, and the courts of such different states may have concurrent jurisdiction of the collection thereof for purposes of administration. Sulz v. Association, 145 N. Y. 563, 571, 572, 40 N. E. 242. There is some question under the authorities how far this location of such an asset by reference to the residence of the debtor and the otherwise concurrent jurisdiction of the courts of several states in the case of a corporation having a residence therein, through representation by agents as above stated, is affected by the physical location of the policy of insurance. Independent of the decisions in other states, there are some in New York which seem at least to intimate that the courts of the state wherein the policy of insurance was found would have precedence in jurisdiction over those of another state where the defendant had a concurrent residence. Such are the cases of Holyoke v. Insurance Co., 22 Hun, 75, affirmed without additional opinion, 84 N. Y. 648, and of Morrisson v. Insurance Co., 57 Hun, 97, 10 N. Y. Supp. 445, which does not seem to have been taken to the court

of appeals. Upon the other hand, the case of Sulz v. Association, above cited, in reviewing the foregoing cases, intimates quite decisively (page 572, 145 N. Y., and page 246, 40 N. E.) that the mere presence of the policy of insurance in one state would not give the courts thereof precedence, and would not prevent, under proper circumstances, the courts of another state from entertaining jurisdiction of an asset based thereon. In this case, however, there is more than the mere accidental, physical location of the policies of insurance in the state of Connecticut, and absence thereof from the state wherein this suit is pending. Their presence in the former state has been accompanied by such circumstances, both preceding and following the death of the intestate, as, in my judgment, require that the courts of the former state should, and of this state should not, entertain jurisdiction for the collection of them as assets. Several years before his death, as hereinbefore stated, the intestate had absolutely transferred the title and possession to and of said policies from himself to the defendant, which continued to hold them at the time of his death. I have assumed that, although the instruments of transfer were absolute in their terms, as a matter of fact they were made as security for the repayment of loans then made by the defendant to the intestate. But upon this assumption the fact remains that the defendant had acquired an absolute title to and possession thereof, which could only be devested by redemption through repayment of the loans. It had acquired, not a mere order upon the funds which might some time become due upon said policies for a certain part thereof, but it had acquired, as pledgee, a control and possession of the entire interest under the policies, which it might enforce in any way it saw fit under the ordinary rules applicable to such pledges; and until he made repayment and redemption the intestate had no right to the possession or control of said policies. This plaintiff, as administratrix, had no better or greater rights than he had at the time of his death. At the time this suit was commenced neither she nor anybody else had made the repayments necessary in behalf of the estate of said intestate to redeem and acquire the possession and control of said policies, and I doubt if she was entitled to maintain this suit independent of the rights of the other administrator. I do not think that this reasoning in this form of action is affected by the fact that the same corporation which held the policies under pledge was the one which had issued them. It is quite possible that plaintiff, if otherwise entitled so to do, might have brought an equity action in which to adjust the various rights of the parties, and that therein the court might have taken care of and adjusted the rights of defendant as pledgee by the proper modification and reduction of its obligations as debtor. But this is not an equity action. It is purely an action at law to establish the legal liability of the defendant upon obligations which at the time of the commencement of the suit were properly in its possession and control and qualified ownership, and to which plaintiff was not entitled.

If, however, I am wrong in this construction of the rights as between defendant and plaintiff merely, it seems to me quite clear

that this court should not give this plaintiff the collection and possession of said assets as against the Connecticut administrator. Without knowledge that this plaintiff had commenced this suit, or even claimed said policies or their proceeds as against him, he performed in behalf of the intestate's estate what the law certainly authorized, if it did not absolutely require. He advanced the moneys with which to redeem said policies. He had been legally appointed administrator, and when he tendered to defendant the amounts due upon said policies there was nothing for it to do but surrender them to him, and so likewise when, having acquired possession of said policies, he demanded payment thereof, he was entitled to the same as against any other representative of the estate, if the defendant was liable. While he may not, in any legal form, have become subrogated to the benefits for the purposes of administration of superior rights which defendant had in said policies as pledgee, certainly equitably he should be given the benefit of such subrogation for the purpose of allowing him to collect the policies, whereon he has advanced a considerable sum of money. Whether as a matter of absolute right or as a mere matter of comity between states, it seems that this court should not entertain jurisdiction as against the courts of Connecticut. Merrill v. Insurance Co., 103 Mass. 245; Sulz v. Association, 145 N. Y. 572, 40 N. E. 240. In accordance with these facts, findings and judgment may ꞏe prepared dismissing plaintiff's complaint, with costs.

Complaint dismissed, with costs.